# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| MARJORIE R. BRAUCHER, | ) | |
| Individually, and as Special | ) | |
| Administrator of the Estate of | ) | |
| GEORGIA BRAUCHER, deceased; | ) | |
| and BONNIE E. LEISER, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | No. 07-3253 |
|  | ) | Consolidated with |
| SWAGAT GROUP, L.L.C. et al., | ) | No. 07-3254 |
|  | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

These consolidated cases come before the Court on Defendant Choice Hotels, International, Inc.'s (Choice Hotels) Motions for Summary Judgment (Case No. 3253 d/e 86 & Case No. 3254 d/e 123) (Choice Summary Judgment Motions) and Motions to Strike and Bar Opinions of David Smith (Case No. 3253 d/e 112 & Case No. 3254 d/e 145) (Motions to Bar); Defendants Himanshu M. Desai, Vasant Patel, Vijay C. Patel, and Swagat Group, LLC (LLC), and Vaidik International, Inc.'s (collectively the Swagat Defendants) Motions for Partial Summary Judgment (Case No.

3253 d/e 110 & Case No. 3254 d/e 143) (Partial Summary Judgment Motions) and Motions for Summary Judgment (Case No. 3253 d/e 111 & Case No. 3254 d/e 144) (Swagat Summary Judgment Motions). In the winter of 2006, Georgia Braucher and Bonnie Leiser stayed at the Comfort Inn in Lincoln, Illinois (Hotel), owned by the Defendant LLC and operated under a Franchise Agreement (Agreement) with Choice Hotels. The other Swagat Defendants were members of the LLC. Georgia Braucher and Bonnie Leiser became ill shortly after their stays at the Hotel, and both were diagnosed with Legionnaires Disease. Legionnaires Disease is a respiratory disease that presents symptoms similar to pneumonia. Swagat Summary Judgment Motions, Exhibit B, Deposition of Carl Fliermans, at 75. On March 10, 2006, the Illinois Health Department closed the Hotel when Legionella bacteria, the bacteria that cause Legionnaires Disease, was found in the Hotel's pool and spa. Georgia Braucher died on March 19, 2006.

Bonnie Leiser and Georgia Braucher's daughter Marjorie Braucher then brought these cases against the Defendants. Choice Hotels brought cross-claims against the Swagat Defendants for indemnification. The Defendants now seek summary judgment on the Plaintiffs' claims. The Swagat Defendants also seek partial summary judgment on Choice Hotels'

cross-claims for indemnification.  For the reasons set forth below, the Motions to Bar are allowed, the Choice Summary Judgment Motions are allowed, and the Swagat Summary Judgment Motions and the Partial Summary Judgment Motions are allowed in part and denied in part.

<u>STATEMENT OF FACTS</u>

On February 15, 2001, Choice Hotels and the Swagat Defendants entered into the Agreement.  <u>Defendant Choice Hotels International, Inc.'s Exhibits to its Memorandum of Law in Support of its Motion for Summary Judgment (Case No. 07-3253 d/e 87 Case No. 07-3254 d/e 125) (Choice Exhibits)</u>, Exhibit 6, <u>Deposition of Vasant Patel</u>, Deposition Exhibit 2, <u>Agreement</u>.  All of the Swagat Defendants were parties to the Agreement, not just the LLC.  The Agreement granted the Swagat Defendants a franchise to operate the Hotel as a Comfort Inn.  The Agreement gave the Swagat Defendants a license to use Choice Hotels' Comfort Inn marks, its system for operating hotels, and its reservation system.  <u>Agreement</u>, § 2.  The Agreement required the Swagat Defendants to pay various fees to Choice Hotels and to comply with all of the Choice Hotels' Rules and Regulations for operating the Hotel as a Comfort Inn.  <u>Id.</u>, §§ 4, 6.  The Agreement further authorized Choice Hotels to inspect the Hotel

periodically to insure that the Swagat Defendants complied with the terms of the Agreement and Choice Hotels' Rules and Regulations.  Id., § 6.g.

The Agreement contained a provision entitled "Indemnification" (Indemnification Clause).[1]  The Indemnification Clause stated, in part:

> Indemnification.  You must defend, indemnify and hold harmless us, our affiliates and subsidiaries, our and their respective officers, directors, agents and employees (the "Indemnified Parties") from any claim, loss, cost, damage, expense and liability (a "Claim"), including reasonable attorneys' fees . . . and any court costs, resulting from any damage or loss, including personal injury, . . . connected with the Hotel construction or operation, . . . out of, or a result of, your (or your agent's or employee's) error, omission, act or failure, even where negligence of an Indemnified Party is alleged, except to the extent that the loss, costs, damage, expense or liability is proximately caused by the negligence of an Indemnified Party.  The amount of our contribution will be calculated by applying principles of comparative negligence where a Claim was jointly caused by your negligence and by our negligence. . . .

Id., § 13.

The Agreement also contained a provision entitled "Business Relationship", which stated, in part:

> You are an independent contractor.  Nothing in this Agreement makes, or is intended to make, either party an agent, legal representative, subsidiary, joint venturer, partner,

---

[1]The Agreement referred to Choice Hotels in the first person and the Swagat Defendants in the second person.

employee, independent contractor or servant of the other (except that we are acting as your agent when making reservations for your Hotel); . . .

Agreement, § 16.a.2.

The Choice Hotels' Rules and Regulations stated that Choice Hotels would perform periodic inspections. The Rules and Regulations referred to such an inspection as a "Quality Assurance Review" (QAR). Choice Exhibits, Exhibit 7 Deposition of Mark Schimmel, Deposition Exhibit 2, Comfort Inn Rules and Regulations (Rules and Regulations), § 806.0. The Rules and Regulations stated that the QAR:

> [I]s designed to assist you and Choice by identifying areas in which your Hotel does not meet the minimum standards of the Comfort Inn brand, as set forth in these Rules & Regulations. This review is not intended to determine whether your Hotel is in compliance with federal, state and local laws and regulations, which is your sole responsibility.

Id. A failing grade in a QAR could, at Choice Hotels' discretion, result in a notice of default and, ultimately, termination of the Agreement if the defaults were not cured within thirty days of the notice. Id.

The Rules and Regulations also required the Swagat Defendants to place a plaque in the lobby visible from the front desk that stated that the Hotel was independently owned and operated by the LLC. Id., § 828.1.

The Choice Hotels provided advertising, a toll-free 800 number telephone reservation system, and a website which included an internet reservation system.  The Choice Hotels' reservation system was tied directly into the Hotel's computerized reservation system.  The Choice Hotels' website contained a statement on the home page that each Choice Hotel was independently owned and operated. Defendant Choice Hotels International Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment (Case No. 07-3254 d/e 125) (Choice/Leiser Memorandum), Statement of Undisputed Fact (SUF), ¶ 52.[2]

The Swagat Defendants began operating the Hotel as a Comfort Inn in 2001.  The Swagat Defendants placed the required plaque in the lobby, stating that the Hotel was independently owned and operated.  The plaque was on display in 2006 when the Plaintiffs stayed at the Hotel.  The Swagat Defendants also kept copies of the current Choice Hotels' Worldwide Hotel Directory (Directory) available in the lobby.  The 2006 Directory contained a statement that each hotel was independently owned and operated. Choice/Leiser Memorandum, SUF, ¶¶ 49-54.

---

[2]The Court only refers to Statements of Undisputed Fact that are not challenged by the opponent of the Motion.

The Hotel participated in Choice Hotels' program that allowed guests to accumulate points toward a free stay at Choice Hotels. If a guest redeemed points for a free stay, Choice Hotels reimbursed the participating hotel for the cost of the night's stay.

The Hotel had an indoor swimming pool and spa. The Rules and Regulations required the Swagat Defendants to have either a swimming pool or a pre-approved exercise room at the Hotel. <u>Rules and Regulations</u>, § 710.0. The Rules and Regulations further stated, "Swimming pool, recreation areas and all filtration and chemical feed systems must meet all applicable local, state and federal codes." <u>Id.</u>, § 710.8(f). The pool and spa area was enclosed in a separate room. The pool and spa area had a ventilation system that was separate from the rest of the Hotel, and had two exterior windows and a door that opened into an interior hallway of the Hotel. <u>Fliermans Deposition</u>, at 27-30.

The Hotel retained an employee of the former owner. The employee was named Wayne Filmore. Filmore handled the maintenance of the pool and spa at the Hotel until he left in 2003. Filmore showed Vasant Patel how to maintain the pool and spa. <u>Swagat Summary Judgment Motions</u>, <u>SUF</u>, ¶¶22-30. The Illinois Department of Public Health (Department)

inspector, Chad Curless, also showed Patel how to use pool test kits.  <u>Choice Exhibits</u>, Deposition Exhibit 2, <u>Deposition of Chad Curless</u>, at 47.  After Filmore left the Hotel, Vasant Patel maintained the pool and spa.  Vasant Patel had no other training or experience in pool and spa maintenance.  Choice Hotels did not provide him with any training in pool and spa maintenance.

Choice Hotels' Franchise Service Director Mark Schimmel conducted the QARs at the Hotel.  He tried to conduct these reviews every seven months, usually twice a year.  He said that he did not make that schedule sometimes.  <u>Schimmel Deposition</u>, at 19-20.  The QAR included a visual inspection of the pool and spa.  Schimmel would check to see that the water was clear.  He would check pool records for chemical checks to determine if the franchisee was doing a minimum of maintenance on a daily basis and to determine if there were any problems.  Schimmel, however, did not test the pool or spa water during the inspection.  Schimmel would visually inspect the pool equipment.  He would also note any chlorine smell in the pool area.  Schimmel had the authority to shut down a pool if the water was cloudy.  Cloudy water was a safety hazard because a person drowning at the bottom of the pool could not be seen if the water was cloudy.  <u>Id.</u>, at 30.  If

Schimmel could not see the floor drain at the bottom of the pool, he would close the pool immediately and require the franchisee to remedy the situation.

Schimmel conducted a QAR of the Hotel on November 11, 2004. This was the last QAR before the Plaintiffs' stays at the Hotel in 2006. Schimmel used a score sheet for the QAR. The sheet listed two general categories, Cleanliness (CL) and Maintenance and Capital Improvement (MCI). The Hotel started with 1000 points in each category. Schimmel assigned points for any deficiency in any listed category. These points were deducted from the initial 1000 points in one of the two categories. The Hotel received a final score in each category. A score of 750 points in each of the two general categories was passing. Id., at 66.

In the November 11, 2004, QAR, Schimmel deducted points for deficiencies in the following aspects of the pool and spa area on the QAR checklist:

- pool area/deck dirty, furniture soiled
- algae/mildew in pool, water unclear, milky, dirty
- furniture damage/needs paint and adequate lounge furniture
- safety equipment not accessible/missing
- depth not adequately marked
- lighting inadequate/damaged/missing

- signs damage/need paint/inadequate
- fences/gates damages/inoperative/inadequate
- walls/floor/deck/ceiling damaged
- damage/needs paint, dated/aged.

Vasant Patel Deposition, Deposition Exhibit 3, QAR, at 2. The Hotel, overall, received a passing grade on this QAR. Id., at 1.

The Department conducted periodic inspections of the pool and spa area. The Department's regulations required the Hotel to check the chlorine and pH levels in the pool and spa twice a day. The free chlorine level was supposed to be 1 to 4 parts per million (ppm) in water below 85° Fahrenheit, and between 2 to 4 ppm for water 86° and above. Plaintiff's Response to Defendant's Motion to Summary Judgment (Case No. 3253 d/e 98), Exhibit 1 Deposition of David Smith, at 33; Fliermans Deposition, at 98; Curless Deposition, at 39. The pH level was supposed to be between 7.2 and 7.6. Curless Deposition, at 39. The Hotel was required to keep a log documenting the daily checks. The Log listed the chlorine, pH level, and water temperature determined each check. Vasant Patel Deposition, Deposition Exhibit 4, Pool Chart (Log).

The Department's Inspector Chad Curless conducted the inspections at the Hotel. On October 17, 2005, Curless shut down the pool and spa

because the chlorine level was below 1 ppm and the pH level was greater than 8 in both the pool and spa.  Curless Deposition, at 61-62.  Curless noted on his report:

> Operational reports have been filled in for the rest of the year through 2005.  This is false documentation.

Chad Curless Deposition, attached Inspection Report dated October 17, 2005, at 2, Supplemental Inspection Remarks.  Curless said that the chlorine and pH levels were all filled out for the rest of the year on the Log. Curless Deposition, at 66.

Curless discussed the proper use of pool testing kits with Vasant Patel at this time.  Vasant Patel had a Taylor brand kit, but used testing chemicals that were designed to be used with a Rainbow brand testing kit. The use of the wrong chemicals could result in incorrect readings.  Curless told Vasant Patel to use only the Taylor brand chemicals with the Taylor brand testing kit.  Curless Deposition, at 76.

Vasant Patel called Curless on October 21, 2005, to tell him that the chlorine and pH levels were corrected in the pool and spa.  Curless authorized him to reopen the pool and spa.  Curless made a surprise inspection of the pool and spa on October 22, 2005.  The chlorine and pH

levels were within appropriate limits at that time.  Id., at 135-36.

Curless inspected the pool and spa again on February 8, 2006.  This time he found that the chlorine level in the pool was too high at 6 ppm, there was no chlorine level in the spa, and the pH level  in the spa was greater than 8.  Curless closed the spa.  Id., at 77-78.  Curless allowed Vasant Patel to reopen the spa on February 14, 2006.  Id., at 186, 189.

The Log stated that on February 8, 2006, the chlorine level was 3.1 and the pH level was 7.1 in both the pool and the spa.  Log.  Curless said that there was a big difference between 7.1 and 8.  Curless Deposition, at 80. In fact, the Log stated that the free chlorine level was always between 3.1 and 3.4, and the pH level was always between 7.1 and 7.4 from January 1, 2006, until the pool and spa were closed on March 10, 2006.  Log. Curless stated that in his experience, chlorine levels and pH levels usually would vary more than this from day to day.  Curless Deposition, at 241.

On March 6, 2006, the Department received a notice of a possible outbreak of Legionnaires Disease at the Hotel.  Id., at 86.  Curless inspected the pool and spa the next day, on March 7, 2006.  This time, he found no chlorine in either the pool or spa and pH levels in excess of 8 in both the pool and spa.  Id., at 88.  He shut both the pool and spa down and took

water samples for testing. Those samples tested positive for Legionella bacteria. The Department immediately sent the Hotel notice to shut the pool and spa down. <u>Vasant Patel Deposition</u>, Deposition Exhibit 6, <u>Letter dated March 10, 2006, from the Department to the Swagat Group, LLC</u>.

The Log showed chlorine levels of 3.1 and pH levels of 7.3 and 7.8, respectively, on March 6, 2006, the day before Curless' inspections. Curless stated in his deposition, that in his experience, the chlorine levels would not have gone from 3.1 to 0 in one day, and pH levels would not have gone from 7.3 to more than 8 in one day. <u>Curless Deposition</u>, at 90-91.

Plaintiff Bonnie Leiser stayed at the Hotel from January 14, 2006, to January 16, 2006. She and her brother Brian Leiser stayed together in the same room. They were attending a funeral of a family member. Her brother made the reservation. Bonnie Leiser had stayed at the Hotel before. Bonnie Leiser went into the spa during her stay at the Hotel. After her stay, she became ill. She was diagnosed with Legionnaires Disease. Bonnie Leiser smoked cigarettes at the time she contracted Legionnaires Disease.

Bonnie Leiser was familiar with the Comfort Inn brand. She had seen Choice Hotels' commercials on television. <u>Choice Exhibits (Case No. 07-3254 d/e 124)</u>, Exhibit 11, <u>Deposition of Bonnie Leiser</u>, at 150-52. She was

not aware of the fact that the LLC owned the Hotel.  She testified that, at the time of her deposition, she understood that the Swagat Defendants owned the Hotel and operated it as a subsidiary of Choice Hotels.  She testified at her deposition that she assumed that Choice Hotels and the Swagat Defendants were partners.  Id., at 155.

Marjorie Braucher and her mother Georgia Braucher stayed at the Hotel from February 11 to February 13, 2006.  Marjorie made the reservation.  Georgia and Marjorie had stayed at other Choice Hotels before elsewhere.  Georgia Braucher did not go into the pool and spa area of the Hotel during her stay.  Georgia walked down the hallway by the pool and spa area about four times during her stay, but she did not go into the area. After their stay, Georgia Braucher became ill.  She was diagnosed with Legionnaires Disease and died on March 19, 2006.  Georgia was 90 years old at the time.  Defendant Choice Hotels International Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment (d/e 87) (Choice/Braucher Memorandum), SUF, ¶¶ 39, 43.

The Department investigated the occurrence of Legionella bacteria at the Hotel pool and spa.  The Department report stated that there were 160 cases of respiratory illnesses reported by people who stayed at the Hotel in

early 2006.  <u>Smith Deposition</u>, attached <u>Report dated July 2, 2009</u>, at 8, ¶

11.  There were five confirmed cases of Legionnaires Disease including

Bonnie Leiser and Georgia Braucher.  <u>Fliermans Deposition</u>, at 168.  The

level of Legionella bacteria found in the water from the pool and spa was

2000 times higher than the level that would normally be found in municipal

tap water.  <u>Id.</u>, at 107.  The Department also tested water from the faucets

and showers in some of the Hotel rooms.  <u>Curless Deposition</u>, at 207-08,

213.  This water had no Legionella bacteria.  <u>Fliermans Deposition</u>, at 114-

17.

The Plaintiffs' expert Dr. David Smith opined that the Hotel did not

maintain the pool and spa properly.  Dr. Smith is a retired United States

Coast Guard Commander with extensive experience in water safety and

water rescue procedures.  He also has training and experience in the proper

maintenance procedures for swimming pools.  <u>Smith Deposition</u>, at 9-12.

He opined that Vasant Patel falsified the Log.  He based his opinion on

Curless' notation on the October 2005 inspection form that the records

were falsified and the fact that the chlorine level and pH level on the Log

stayed so uniform.  He opined that the levels would have varied more widely

from day to day.  He noted that the Log showed that the pool and spa were

regularly subjected to shock treatments designed to increase the amount of free chlorine in the pool and spa.  Smith Deposition, at 83-84; see Curless Deposition, at 71.  He said that the chlorine levels should have increased immediately after the treatments, but the Log consistently showed no change in the levels.  He opined that this indicated that the Log was fabricated.  Curless agreed that it was unusual for the chlorine and pH levels to stay so uniform from day to day.  Curless Deposition, at 241.

The Plaintiffs' expert Dr. Carl Fliermans opined to a reasonable degree of medical certainty that Bonnie Leiser and Georgia Braucher contracted Legionnaires Disease from the bacteria in the pool and spa area of the Hotel.  Fliermans Deposition, at 168-72.  Dr. Fliermans is a microbial ecologist and an expert on Legionnaires Disease.  Fliermans Deposition, at 10-17.  Dr. Fliermans based his opinion on the fact that others who stayed at the Hotel contracted the disease; Bonnie Leiser and Georgia Braucher both were infected with the specific type of Legionella bacteria that was found in the pool and spa; the levels of Legionella bacteria found in the spa on March 7, 2006, were so high that the level would have been elevated when Leiser and Braucher stayed at the Hotel; the pool and spa records indicated that the pool and spa were not maintained properly; and no other

cases of Legionnaires Disease were reported to the Centers for Disease Control from the Lincoln, Illinois, area generally. <u>Fliermans Deposition</u>, at 54, 78, 85, 168-72. He opined that under these circumstances, the source of Bonnie Leiser and Georgia Braucher's infection was the Hotel's pool and spa.

Dr. Fliermans stated that Legionnaires Disease is contracted by taking an aerosol form of contaminated water into the person's lungs. He opined that Bonnie Leiser could have breathed in the mist from the pool and spa when she used the spa. He opined that Georgia Braucher could have breathed in the mist from the pool and spa area when she walked down the Hotel hallway. He opined that the mist from the pool and spa area came into the Hotel hallway when the door to the spa and pool area was opened and closed. <u>Fliermans Deposition</u>, at 142-46.

Bonnie Leiser and Marjorie Braucher, individually and as the special administrator of the estate of Georgia Braucher (Estate), then brought these consolidated actions against the Defendants. <u>Second Amended Complaint (Case No. 07-3253 d/e 64 & Case No. 07-3254 d/e 69)</u>. Leiser alleged claims for negligence against all Defendants (Counts I, III, VI, VIII, X, XII) (Negligence Counts), res ipsa loquitur against all Defendants (Counts I, IV,

VII, IX, XI, XIII) (Leiser Res Ipsa Counts), and apparent agency against Choice Hotels (Count V) (Leiser Agency Count).  Marjorie Braucher alleged claims for wrongful death (Counts I, V, X, XIV, XVIII, XXII) (Wrongful Death Counts), damages for Georgia Braucher injuries and suffering prior to death under Illinois Survival Act (Counts II, VI, XI, XV, XIX, XXIII) (Survival Act Counts), funeral expenses under the Illinois Funeral Expense Act (Counts III, VII, XII, XVI, XX, XXIV) (Funeral Expense Counts), res ipsa loquitur (Counts IV, VIII, XIII, XVII, XXI, XXV) (Braucher Res Ipsa Counts), and apparent agency against Choice Hotels (Count IX) (Braucher Agency Count).

Choice Hotels filed cross-claims against the Swagat Defendants. Choice Hotels International, Inc.'s Answer to Plaintiff's Second Amended Complaint at Law and Cross-Claim Against Swagat Defendants (Case No. 07-3253 d/e 66, Case No. 07-3254 d/e 108) (Cross-Claims).  Choice Hotels alleged cross-claims for express indemnity under the Indemnification Clause, implied indemnity, and contribution against each Swagat Defendant.  The express indemnity claims asked for a judgment against each Swagat Defendant for any amount that Choice Hotels is liable to the Plaintiffs, plus attorneys fees and costs for defense of the suit.  Cross-Claims, Counts I, IV,

VII, X and XIII.  The implied indemnity claims alleged that the Swagat Defendants were obligated to indemnify Choice Hotels if Choice Hotels was found vicariously liable for the acts of the Swagat Defendants.  Cross-Claims, Counts II, V, VIII, XI and XIV.

ANALYSIS

The Defendants now seek summary judgment.  Choice Hotels and the Swagat Defendants seek summary judgment on all of Plaintiffs' claims.  The Swagat Defendants also seek partial summary judgment on Choice Hotels' Cross-Claims for express and implied indemnification.  Choice Hotels filed the Motions to Bar to bar certain opinions of Dr. Smith.  The Court must first address the Motions to Bar because the Plaintiffs rely on Dr. Smith's opinions to oppose Choice Hotels' Summary Judgment Motions.  The Court will then address the Choice Hotels' Summary Judgment Motions, the Swagat Summary Judgment Motions, and then the Partial Summary Judgment Motions.

I.  MOTIONS TO BAR

Dr. Smith has opined that: (1) the pool and spa at the Hotel were not properly maintained; (2) Bonnie Leiser and Gloria Braucher contracted Legionnaires Disease from the Hotel's improperly maintained pool and spa;

(3) Defendant Vasant Patel falsified the maintenance records of the pool and spa; (4) all of the Defendants had a duty to maintain the pool and spa properly; (5) all of the Defendants breached that duty; and (6) if the Defendants had performed their obligation to maintain the pool and spa, Bonnie Leiser and Gloria Braucher would not have contracted Legionnaires Disease.  Smith Deposition, attached Report dated July 2, 2009.  Choice Hotels moves to bar Dr. Smith's opinions that Choice Hotels had a duty to maintain the pool and spa at the Hotel.

Expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  This Court is required to perform a gate-keeping function to determine whether a party's proposed expert is qualified and whether his opinions have a proper basis and will assist the trier of fact. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v.

<u>Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 593 (1993).

The Court must first consider whether Dr. Smith is qualified to offer expert opinions about Choice Hotels' duty to maintain the pool and spa at the Hotel. <u>Fed. R. Evid</u>. 104(a); <u>Daubert</u>, 509 U.S. at 593, n. 10. The Court finds that he lacks the required expertise to render those opinions. Dr. Smith is an expert in water safety and water rescue procedures. He also has experience in maintaining swimming pools. He, therefore, may have the expertise to render an opinion that the pool and spa were not maintained properly. Dr. Smith, however, is not qualified to render expert opinions regarding the identity of the party or parties that had a legal obligation to maintain the pool and spa properly. The identity of the persons or entities that had a duty to maintain the pool and spa at the Hotel turned on the Agreement and the ongoing business relationship between the parties involved. Dr. Smith does not have any experience in either franchise relationships or in hotel industry practices. He has no special knowledge, experience, or training to enable him to render an expert opinion about when a franchisor is obligated to maintain a pool at a hotel operated under a written franchise agreement. His opinions that Choice Hotels owed a duty to maintain the pool and spa at the Hotel are barred.

II.    CHOICE HOTELS' SUMMARY JUDGMENT MOTIONS

Choice Hotels moves for summary judgment on three bases.  First, Choice Hotels seeks summary judgment on the Negligence Counts, the Wrongful Death Counts, the Survival Act Counts, and the Funeral Expense Counts (collectively the Duty Counts) on the grounds that it did not owe a duty to either Bonnie Leiser or Georgia Braucher to maintain the pool and spa at the Hotel.  Second, Choice Hotels moves for summary judgment on the Leiser and Braucher Res Ipsa Counts (collectively the Res Ipsa Counts) on the grounds that it was not in exclusive control of the pool and spa at the Hotel.  Third, Choice Hotels moves for summary judgment on the Leiser and Braucher Agency Counts (collectively the Agency Counts) on the grounds that there is no evidence that circumstances existed under which it would be responsible to either Bonnie Leiser or Georgia Braucher for the actions of any Swagat Defendant under an apparent agency theory.

At summary judgment, the movant, Choice Hotels, must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The Court must consider the evidence presented in the light most favorable to the opponent of the motion, the Plaintiffs.  Any doubt as to the existence of a genuine

issue for trial must be resolved against Choice Hotels. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Once Choice Hotels has met its burden, each Plaintiff must present evidence to show that issues of fact remain with respect to an issue essential to her case, and on which she will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

The Duty Counts are all based on a theory of negligence and require evidence that Choice Hotels owed a duty to Bonnie Leiser and Georgia Braucher to maintain the pool and spa at the Hotel. <u>See</u> <u>Martin v. McDonald's Corp.</u>, 213 Ill.App.3d 487, 489, 572 N.E.2d 1073, 1076 (Ill.App. 1st Dist., 1991). It is clear that the Agreement did not create a duty on the part of Choice Hotels toward the patrons of the Hotel, including Bonnie Leiser and Georgia Braucher. The LLC owned the Hotel. Choice Hotels provided a franchise to the Swagat Defendants pursuant to the Agreement. Under the terms of the Agreement, Choice Hotels neither owned nor operated the Hotel. The Agreement specifically provided that the Swagat Defendants were independent contractors and no agency relationship existed between them and Choice Hotels.

The face of the Agreement, however, is not controlling on the issue of

duty. A franchisor may assert sufficient control of a hotel to be responsible for the operation of the pool and spa. <u>Oberlin v. Marlin American Corp.</u>, 596 F.2d 1322, 1327 (7th Cir. 1979). A franchisor, however, must make sure that the franchisee maintains the required level of quality associated with the franchised brand in order to protect trademarks. <u>Id.</u> This monitoring may include setting standards for the operation of the franchise, retaining the right to inspect the franchise operation periodically, and retaining the right to withdraw the franchise or to close an aspect of the franchise operation for failure to comply with the franchisor's standards. A franchisor will not be responsible for the operation of the franchisee hotel unless it asserts more direct control than these limited rights associated with maintaining the quality of its brand. <u>Chelkova v. Southland Corp.</u>, 331 Ill.App.3d 716, 771 N.E.2d 1100, 1107 (Ill.App. 1st Dist., 2002); <u>Castro v. Brown's Chicken and Pasta, Inc.</u>, 314 Ill.App.3d 542, 551, 732 N.E.2d 37, 45-46 (Ill.App. 1st Dist., 2000); <u>Yassin by Yassin v. Certified Grocers of Illinois, Inc.</u>, 150 Ill. App.3d 1052, 1070-71, 502 N.E.2d 315, 329-30 (Ill.App. 1st Dist., 1986); <u>Coty v. U.S. Slicing Mach. Co., Inc.</u>, 58 Ill.App.3d 237, 241-42, 373 N.E.2d 1371, 1375 (Ill.App. 2[d] Dist., 1978).

The Plaintiffs present no evidence that Choice Hotels went beyond

these limited steps to maintain the required level of quality associated with the franchised brand. Choice Hotels made visual inspections of the pool and spa area twice a year at most, and retained the right to close the pool and spa if the water was cloudy. Choice Hotels retained the right to close cloudy pools because of the risk of drowning, not because of the risk of toxic bacteria build-up. Choice Hotels also required, in the Rules and Regulations, that the Hotel comply with the law. The Swagat Defendants had to meet these requirements anyway. Choice Hotels did not impose any additional requirements for controlling bacteria levels in the pool or spa. Choice Hotels never took any action to test the water quality in the pool and spa area. Based on the evidence presented, Choice Hotels did not exercise sufficient control over the Hotel to be considered an operator of the Hotel.

The Plaintiffs rely on Greil v. Travelodge International, Inc., as authority that a franchisor may be responsible for the operation of a hotel if it only takes the limited steps that Choice Hotels did to maintain the quality of its brand. Greil, 186 Ill.App.3d 1061, 541 N.E.2d 1288 (Ill.App. 1st Dist., 1989). The Greil decision applied California law, not Illinois law. The California cases on which the Greil court relied indicate that a

franchisor may be deemed responsible for the franchisee's operations even when the franchisor only engages in limited monitoring of the franchise. Greil, 541 N.E.2d at 1292, and cases cited therein. California law is inconsistent with Illinois law on this point, and Illinois law controls. The Greil decision, therefore, is not persuasive.

The Plaintiffs argue that Choice Hotels is liable because it voluntarily assumed the duty to maintain the pool and spa at the Hotel. Whether a party voluntarily assumed a duty is a question of law. Castro, 732 N.E.2d at 42. If a party voluntarily undertakes a duty, the duty is limited to the extent of the undertaking. Frye v. Medicare-Glaser Corp., 153 Ill.2d 26, 32, 605 N.E.2d 557, 563 (Ill., 1992). Here, Choice Hotels never voluntarily took on the task of maintaining the water to avoid the risk of infection. Again, Choice Hotels made visual inspections of the pool and spa area twice a year at most, and retained the right to close the pool and spa if the water was cloudy because of the risk of drowning, not because of the risk of toxic bacteria build-up. None of the evidence presented indicates that Choice Hotels assumed that duty. Choice Hotels is entitled to summary judgment on the Duty Counts alleged against it.

Choice Hotels is also entitled to summary judgment on the Res Ipsa

Counts. To establish a res ipsa loquitur claim, a party must present evidence that: (1) the occurrence ordinarily does not happen in the absence of negligence, and (2) the exposure to Legionella bacteria was caused by an agency or instrumentality within the Defendants' exclusive control. Heastie v. Roberts, 226 Ill.2d 515, 531-32, 877 N.E.2d 1064, 1076-77 (Ill., 2007). As explained above, Choice Hotels did not exert exclusive control over the pool and spa at the Hotel. Choice Hotels, at best, made limited visual inspections of the pool and spa twice a year and required the Swagat Defendants to comply with the law regulating aquatic facilities in hotels. The LLC owned the Hotel, and Vasant Patel managed the Hotel, including the pool and spa. Choice Hotels did not exert exclusive control. Choice Hotels is entitled to summary judgment on the Res Ipsa Counts.

Choice Hotels is also entitled to summary judgment on the Agency Counts. To establish an apparent agency, the Plaintiffs must present evidence that: (1) Choice Hotels held out one or more of the Swagat Defendants as having authority to act as its agent, or Choice Hotels knowingly acquiesced in one or more of the Swagat Defendants exercising the authority as Choice Hotels' agent; (2) the Plaintiffs, acting reasonably under the circumstances, assumed that an agency existed; and (3) the

Plaintiffs relied on the apparent agency to their detriment.  Oliveira-Brooks v. Re/Max Intern., Inc., 372 Ill.App.3d 127, 137, 865 N.E.2d 252, 260 (Ill.App. 1st Dist., 2007); accord, Gilbert v. Sycamore Mun. Hosp., 156 Ill.2d 511, 525, 622 NE.2d 788, 795 (Ill., 1993).

The Plaintiffs fail to present evidence that Choice Hotels held the Swagat Defendants out as its agents.  The Plaintiffs present evidence that Leiser believed that Choice Hotels operated the Hotel.  She testified that she believed this based on the Choice Hotels commercial she saw on television.[3]  The Plaintiffs also present evidence that Choice Hotels operated a reservation system that used an 800 telephone number and an internet web site.  Choice Hotels also operated a frequent traveler program in which customers could accumulate points that would entitle them to a free night's stay at a participating Choice Hotels.

None of this evidence demonstrates that Choice Hotels held out the Swagat Defendants as its agent.  The use of the brand name shows a franchise relationship, but the existence of a franchise does not create an

---

[3]The Plaintiffs also present inadmissible hearsay evidence concerning Georgia Braucher's understanding of Choice Hotels' relationship with the Hotel.  Inadmissible hearsay is not competent to support a summary judgment motion.  Fed. R. Civ. P. 56(e); Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 704 (7th Cir. 2009).  The Court, therefore, will not consider this evidence.

agency. <u>Oberlin</u>, 596 F.2d at 1327. Bonnie Leiser does not present evidence of the content of the Choice Hotels commercials which gave her the impression that Choice Hotels operated its franchisees' hotels. In fact, the only evidence of representations regarding the relationship between Choice Hotels and the Swagat Defendants were the parties' repeated disclaimers of any agency: the plaque in the lobby of the Hotel that declared that the Hotel was independently owned and operated, the disclaimer on the Choice Hotels' website which stated that all Choice Hotels are independently owned and operated, and the disclaimer in the 2006 Directory which stated that all Choice Hotels are independently owned and operated. The Plaintiffs fail to present evidence that Choice Hotels held the Swagat Defendants out as its agents. Choice Hotels is entitled to summary judgment on the Agency Counts as well.

The Plaintiffs rely on <u>Greil</u> and <u>Crinkley v. Holiday Inns, Inc.</u>, to support their claim of apparent agency. <u>Greil</u>, 541 N.E.2d at 1293; <u>Crinkley</u>, 844 F.2d 156, 166 (4th Cir. 1988). Neither of these cases apply Illinois law. In addition, the <u>Greil</u> court denied summary judgment on the apparent agency theory because the franchisee hotel did not contain a disclaimer that the hotel was independently owned and operated. <u>Greil</u>,

541 N.E.2d at 1293.  The <u>Greil</u> court noted that even under California law a franchisor could avoid a claim of apparent agency by placing a disclaimer in the lobby of the franchisee hotel.  <u>Id.</u>  The <u>Crinkley</u> court denied summary judgment on the apparent agency claim because the only notice that the franchisee hotel was independently owned and operated was in the restaurant, and so, guests could not receive notice of this fact before they checked in.  <u>Crinkley</u>, 844 F.2d at 167 n.3.  Here, the LLC displayed the disclaimer in the lobby where patrons could see it before they checked in. There is no evidence of an apparent agency.  Choice Hotels is entitled to summary judgment.

III.  <u>PARTIAL SUMMARY JUDGMENT MOTIONS</u>

The Swagat Defendants ask for partial summary judgment on Choice Hotels express indemnity and implied indemnity counts in the Cross-Claims.  The Swagat Defendants are entitled to partial summary judgment on the implied indemnity claims, but issues of fact exist with respect to the express indemnity claims.

Indemnity clauses in contracts are enforceable in Illinois and are governed by principles of contract interpretation.  <u>Bentley v. Palmer House Co.</u>, 332 F.2d 107, 110 (7th Cir. 1964).  In this case, the Indemnification

Clause is clear: the Swagat Defendants are obligated to indemnify Choice Hotels for all costs, including attorney fees and costs of suit, if: (1) Choice Hotels is subject to a claim for damages allegedly arising from the operation of the Hotel; (2) Choice Hotels is not at fault for the alleged damages; and (3) one or more of the Swagat Defendants is found to be at fault for the alleged injuries. The first two elements have been established: the Plaintiffs brought claims against Choice Hotels for damages allegedly arising from the operation of the Hotel, and Choice Hotels is not at fault. As discussed below, issues of fact remain with respect to whether any of the Swagat Defendants were at fault in this case. The Swagat Defendants may be obligated to indemnify Choice Hotels, and so pay its attorney fees and expenses, if one or more of the Swagat Defendants is found to be at fault for the injuries to Bonnie Leiser and the injuries and death of Georgia Braucher.

The Swagat Defendants argue that the Indemnification Clause is really a contribution clause. The Court disagrees in this situation. The clause obligated the Swagat Defendants to indemnify Choice Hotels in the limited situation in which Choice Hotels was subject to a claim, but was not at fault. If Choice Hotels had been partially at fault, then the Swagat Defendants would be correct; the clause would have imposed a contribution

obligation on joint tort feasors, not an indemnification obligation. But, that did not occur here because Choice Hotels was not at fault. Thus, the Swagat Defendants are not entitled to summary judgment on the express indemnity cross-claim.

The Swagat Defendants are entitled to summary judgment on the implied indemnity claim. Choice Hotels alleged that the Swagat Defendants were impliedly obligated to indemnify it if Choice Hotels was vicariously liable for their acts. Choice Hotels is not vicariously liable for the acts of the Swagat Defendants, so there is no implied indemnity. The Swagat Defendants are entitled to partial summary judgment on this cross-claim.

IV.  SWAGAT SUMMARY JUDGMENT MOTIONS

All of the Swagat Defendants ask for summary judgment on all of Plaintiffs' claims, both the Duty Counts and the Res Ipsa Counts. In addition, Vijay C. Patel, Himanshu M. Desai, and Vaidik International, Inc., seek summary judgment on the grounds that the LLC owned and operated the Hotel and that they, as members of the LLC, have no personal liability. Defendant Vasant Patel also seeks partial summary judgment to the extent that the Plaintiffs seek to hold him liable as a member of the LLC. The Court will address these portions of the Motions separately.

## A.    The Members of the LLC

Defendants Vijay C. Patel, Himanshu M. Desai, and Vaidik International, Inc., seek summary judgment on the grounds that they are not liable for the acts of the LLC, the owner of the Hotel. Vijay C. Patel, Himanshu M. Desai, Vasant Patel and Vaidik International, Inc., were members of the LLC. The LLC owned the Hotel. Only Vasant Patel worked at the Hotel. Defendants Vijay C. Patel, Desai, and Vaidik International, Inc. were only members. Members of limited liability companies, such as the LLC, are not liable for the tortious acts of the limited liability company. 805 ILCS 180/10-10. Defendants Vijay C. Patel, Desai, and Vaidik International, Inc. are entitled to summary judgment.

The Plaintiffs argue that these Defendants are personally liable because they signed the Agreement in their personal capacities. This is clearly wrong. A member of a limited liability company who signs a contract in a personal capacity is liable on the contract, but is not thereby liable for any other obligation of the limited liability company. 805 ILCS 180/10-10. These Defendants are entitled to summary judgment.

Similarly, Vasant Patel is entitled to partial summary judgment to the extent that the Plaintiffs seek to hold him liable as a member of the LLC.

Vasant Patel managed the Hotel and maintained the pool and spa, and as explained below, may or may not have some personal liability for his own actions, but he is not liable simply as a member of the LLC.

B.     Res Ipsa Counts

The LLC and Vasant Patel, personally, seek summary judgment on the Plaintiffs' Res Ipsa Counts on the grounds that the Plaintiffs failed to present evidence to establish that the pool and spa were the source of the Plaintiffs' Legionnaires Disease.  To establish a res ipsa loquitur claim, a party must present evidence that: (1) the occurrence ordinarily does not happen in the absence of negligence, and (2) the exposure to Legionella bacteria was caused by an agency or instrumentality within the Defendants' exclusive control.  Heastie, 877 N.E.2d at 1076-77.  The Plaintiffs have presented evidence on each of these elements.  The Plaintiffs' expert, Dr. Fliermans, opined that the source of the Legionella bacteria that caused Bonnie Leiser and Georgia Braucher's Legionnaires Disease was the pool and spa at the Hotel.  Fliermans Deposition, at 168-70.  The pool and spa area was in the exclusive control of the LLC and Vasant Patel, as the Hotel manager and the individual who personally maintained the pool and spa. Dr. Smith opined that the Legionella bacteria were in the pool and spa

because the pool and spa were not properly maintained. Curless' inspections, when read favorably to the Plaintiffs, also support the inference the pool and spa were not properly maintained: the records were falsified at the October 2005 inspection; there was no chlorine in the spa at the February 2006 inspection; and there was no chlorine in either the pool or spa at the March 8, 2006, inspection. This evidence is sufficient to establish that issues of fact exist on the Res Ipsa Counts.

The Defendants argue that Plaintiffs failed to produce evidence that the pool and spa were the exclusive source of the Legionella bacteria because Dr. Fliermans agreed that: (1) Legionella bacteria existed in low levels in the Lincoln, Illinois, public water supply; (2) the bacteria could have theoretically multiplied in the Hotel's hot water heater; and so, (3) the Plaintiffs could have come in contact with the Legionella bacteria while taking a shower at the Hotel rather than from the pool or spa.[4] Fliermans Deposition, at 84-89. Dr. Fliermans, however, excluded the Lincoln,

[4]The Court notes that the hot water heaters would also be under the exclusive control of the Hotel, so the source of the bacteria would still be within the exclusive control of the Hotel. The Defendants do not address this point. The Defendants appear to be arguing that they are entitled to summary judgment because, with respect to the Hotel's hot water heaters, the Plaintiffs have not presented evidence that Legionella bacteria do not normally grow to toxic levels in hotel hot water heaters absent some negligence.

Illinois, water supply and the showers at the Hotel as possible sources of the Legionella bacteria because: (1) no cases of Legionnaires Disease from the Lincoln, Illinois, area generally were reported to the Centers for Disease Control; (2) the pool and spa were not maintained properly; and (3) the level of Legionella bacteria found in the spa area was so high on March 7, 2006, that it must have been at elevated levels at the time that Bonnie Leiser and Georgia Braucher stayed at the Hotel. See Fliermans Deposition, at 54, 78, 85, 168-72. These reasons are sufficient to support the validity of his opinions for purposes of summary judgment. The Defendants may cross-examine Dr. Fliermans on these matters to point out the weakness in his opinions at trial. His opinions are sufficient to create an issue of fact.

The Defendants also ask for summary judgment on the Duty Counts. To establish the Duty Counts, the Plaintiffs must present evidence of a duty, breach of duty, injury and proximate cause. Weiss v. Rush North Shore Medical Center, 372 Ill.App.3d 186, 188, 865 N.E.2d 555, 557 (Ill.App. 1st Dist., 2007). The Plaintiffs have presented evidence on these elements. The Defendant LLC owned and operated the Hotel, and so, owed a duty to the Plaintiffs as guests. Vasant Patel, as manager and the person responsible for maintaining the pool and spa, had a duty to the Plaintiffs as

guests. Dr. Smith opined that these Defendants breached their duty by failing to maintain the pool and spa properly, thereby allowing the Legionella bacteria to grow to dangerous levels. The inspections by Curless supported Dr. Smith's opinions. On the issue of proximate cause, Dr. Fliermans opined that the Legionella bacteria in the pool and spa were the source of the bacteria that caused Bonnie Leiser and Georgia Braucher to contract Legionnaires Disease. Last, Bonnie Leiser suffered injuries from her illness, and Georgia Braucher died from her illness. The Plaintiffs have presented evidence on each element.

The Defendants argue that Dr. Fliermans' opinions on causation are mere conjecture.[5] As explained above, the Court disagrees. Dr. Fliermans had a valid basis for his conclusions that the pool and spa were the source of Legionella bacteria that caused Bonnie Leiser and Georgia Braucher's illnesses. The Defendants may attack those opinions on cross-examination at trial, but those opinions are sufficient for purposes of summary judgment.

THEREFORE, Defendant Choice Hotels, International, Inc.'s Motions for Summary Judgment (Case No. 3253 d/e 86 & Case No. 3254 d/e 123)

---

[5]The Court does not rely on Dr. Smith's opinions on causation. Dr. Smith stated in his deposition that he was not an expert in the transmission of bacteria from a source to humans. Smith Deposition, at 79-80.

and Motions to Strike and Bar Opinions of David Smith (Case No. 3253 d/e 112 & Case No. 3254 d/e 145) are ALLOWED, and Defendants Himanshu M. Desai, Vasant Patel, Vijay C. Patel, and Swagat Group, LLC, and Vaidik International, Inc.'s Motions for Partial Summary Judgment (Case No. 3253 d/e 110 & Case No. 3254 d/e 143) and Motions for Summary Judgment (Case No. 3253 d/e 111 & Case No. 3254 d/e 144) are ALLOWED in part and DENIED in part. Partial summary judgment is entered in favor of Defendants Choice Hotels, International, Inc., Himanshu M. Desai, Vijay C. Patel, and Vaidik International, Inc., and against Plaintiffs Bonnie Leiser and Marjorie R. Braucher, individually and as Special Administrator of the Estate of Georgia Braucher, deceased, with respect to the Plaintiffs' claims against these Defendants. Partial summary judgment is entered in favor of Defendant Vasant Patel to the extent that he is not liable to either Plaintiff based solely on his position as a member of Defendant Swagat Group, LLC. Partial summary judgment is entered in favor of Defendants Himanshu M. Desai, Vasant Patel, Vijay C. Patel, and Swagat Group, LLC, and Vaidik International, Inc., and against Choice Hotels International, Inc. on the cross-claims for implied indemnity. The Swagat Summary Judgment Motions and Partial Summary Judgment

Motions are otherwise DENIED.

IT IS THEREFORE SO ORDERED.

ENTER:   March 19, 2010

       FOR THE COURT:

                             s/  Jeanne E. Scott
                                JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE